UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT YBARRA JR.,  )
  )
    Petitioner,  )  3:00-cv-0233-GMN-VPC
  )
vs.  )
  )  **ORDER**
RENEE BAKER,[1] *et al.*,  )
  )
    Respondents.  )
  )

Before the court is petitioner's motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.[2] ECF No. 176. The motion asserts that this court should set aside its prior orders and judgment denying habeas relief and allow him to amend his habeas petition to include a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the Eighth Amendment prohibits the execution of mentally retarded persons. For the reasons that follow, the motion is denied without prejudice pending further briefing.

*Background*

In June of 1981, Ybarra was convicted of first degree murder, first degree-kidnaping, battery with intent to commit sexual assault, and sexual assault. He was sentenced to death for the murder.

---

[1] Renee Baker is substituted for her predecessor, E.K. McDaniel, as Warden of Ely State Prison. Fed. R. Civ. P. 25(d).

[2] The motion also asks for an indicative ruling pursuant to Rule 62.1. Ybarra's appeal is no longer pending. ECF No. 190. Thus, such a ruling is unnecessary.

1  The details of the crimes are set forth in the Nevada's Supreme Court's opinion on direct appeal
2  (*Ybarra v. State*, 679 P.2d 797 (Nev. 1984)) and will not be repeated here.

3  After failing to obtain relief on direct appeal, Ybarra filed a petition for post-conviction relief
4  in the state district court. The court held a two-day evidentiary hearing on the petition. On July 9,
5  1986, the state district court denied post-conviction relief in a fifty-eight page order that addressed
6  each of Ybarra's claims of error, of which there were in excess of forty. Ybarra appealed. On
7  January 21, 1987, the Nevada Supreme Court affirmed the lower court in a reported decision.
8  *Ybarra v. State*, 731 P.2d 353 (Nev. 1987).

9  Next, Ybarra initiated, in this court, his first federal habeas corpus proceeding. The court
10 found that petition to contain a claim that was not exhausted in state court. Consequently, the
11 petition was dismissed without prejudice so that Ybarra could return to state court. Ybarra then filed
12 his second state petition which was based on a constitutional challenge to the *M'Naghten* test. The
13 state district court dismissed that petition, and Ybarra's appeal in the Nevada Supreme Court was
14 unsuccessful.

15 Ybarra initiated his second federal habeas action in 1989. In that proceeding, this court
16 dismissed Ybarra's petition without prejudice, but with an admonishment that he was allowed only
17 one final opportunity to return to state court to exhaust all grounds for relief. In April 1993, Ybarra
18 commenced his third state petition. The state district court dismissed that petition, and Ybarra's
19 appeal in the Nevada Supreme Court was unsuccessful, as was his subsequent petition for a writ of
20 *certiorari* in United States Supreme Court.

21 In May of 2000, this court received the habeas petition initiating this action. In September of
22 2002, he filed an amended petition setting forth thirty-four grounds for relief, including a claim
23 based on *Atkins*. In March of 2003, Ybarra filed his fourth state habeas petition, which also included
24 an *Atkins* claim.

25 In July of 2004, this court ruled upon respondents' motion to dismiss Ybarra's amended
26

petition. In doing so, the court found that Ybarra had failed to exhaust his state court remedies for numerous claims, including his *Atkins* claim, and directed him to either abandon his unexhausted claims or suffer dismissal pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982). After this court denied his motion for reconsideration with regard to that decision, Ybarra filed a notice abandoning the unexhausted claims, but reserving his right to appeal the court's orders directing him to do so.

In November of 2005, the Nevada Supreme Court reversed the lower court's dismissal of Ybarra's *Atkins* claim on procedural grounds and remanded the issue for appropriate proceedings under Nev. Rev. Stat. 175.554(5).[3] Ybarra then filed a motion in the state district court to set aside his death sentence pursuant to that provision.

In October of 2006, this court entered a final order and judgment denying Ybarra's amended petition on the merits. Ybarra appealed. While his appeal was pending in the Ninth Circuit Court of Appeals, the state district court, after holding a two-day hearing, denied Ybarra's *Atkins* claim, and the Nevada Supreme Court affirmed.

In September of 2011, a three judge panel of the court of appeals affirmed this court's denial of Ybarra's petition. After his petition for a rehearing *en banc* was denied, Ybarra petitioned for *certiorari* in the United States Supreme Court.

In May of 2012, the Nevada Supreme Court denied Ybarra's petition for reconsideration in relation to his *Atkins* claim and ordered the issuance of his remittitur. Two days later, Ybarra filed the Rule 60(b) motion addressed herein. In October of 2012, the United States Supreme Court

---

[3] Nev. Rev. Stat. 175.554(5) provides as follows:

> If a sentence of death is imposed and a prior determination regarding mental retardation has not been made pursuant to NRS 174.098, the defendant may file a motion to set aside the penalty on the grounds that the defendant is mentally retarded. If such a motion is filed, the court shall conduct a hearing on that issue in the manner set forth in NRS 174.098. If the court determines pursuant to such a hearing that the defendant is mentally retarded, it shall set aside the sentence of death and order a new penalty hearing to be conducted. Either party may appeal such a determination to the Supreme Court pursuant to NRS 177.015.

denied *certiorari* in relation to his federal appeal.

*Discussion*

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). A motion under subsections (b)(4-6) must be brought "within a reasonable time." Fed.R.Civ.P. 60(c)(1). Relief under subsection (b)(6) requires a showing of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

Rule 60(b) applies to habeas proceedings, but only in conformity with AEDPA,[4] including the limits on successive federal petitions set forth at 28 U.S.C. § 2244(b). *Gonzalez*, 545 U.S. at 529. Because it asks the court to consider a substantive "claim," Ybarra's Rule 60(b) motion is, ostensibly, subject to § 2244(b). *See id.* at 530. Ybarra argues, however, that the holding in *Stewart v. Martinez–Villareal*, 523 U.S. 637 (1998), controls this issue. The court agrees.

In *Martinez–Villareal*, the petitioner filed a habeas petition raising a series of claims, including a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), alleging that he was not competent to be executed. 523 U.S. at 640. The district court dismissed the *Ford* claim as premature because his execution had not been scheduled, but the court decided the merits of the remaining claims. *Id*. When a warrant was issued for his execution, which ripened his *Ford* claim, petitioner initiated a state proceeding and then moved to reopen his *Ford* claim in federal court. *Id*.

In holding that the renewed claim was not "second or successive," the Supreme Court first noted that:

> . . . [N]one of our cases . . . ha[s] ever suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition. A court where such a petition was filed could adjudicate these claims under the same standard as would govern those made in any other first petition.

*Id*. at 644. The court reasoned that petitioner's *Ford* claim was analogous to a claim that was

---

[4] The Antiterrorism and Effective Death Penalty Act

4

previously dismissed for failure to exhaust because "in both situations, the habeas petitioner does not receive an adjudication of his claim." *Id*. at 645. It was concerned that a contrary conclusion "would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Id*.

In the absence of any controlling cases to the contrary, the rationale in *Martinez-Villareal* compels this court to conclude that Ybarra's Rule 60(b) motion is not a successive petition for the purposes of § 2244(b).[5] And, because Ybarra promptly filed his Rule 60(b) motion upon the conclusion of state court proceedings on his *Atkins* claim, the motion was made "within a reasonable time" for the purposes of Fed.R.Civ.P. 60(c)(1).

Turning to whether Ybarra is entitled to relief under Ruled 60(b)(6),[6] the question is whether he can demonstrate "extraordinary circumstances" as required by *Gonzalez*.[7] Obviously, only those facing the death penalty may even invoke *Atkins*. Also, *Atkins* reflects one of the rare instances in which the Supreme Court has announced a new rule of constitutional law that it also made retroactively applicable to cases on collateral review. *See In re Holladay*, 331 F.3d 1169, 1172-73 (11th Cir. 2003) (explaining why *Atkins* is, "by logical necessity," retroactive). Finally, *Atkins* was issued not only after Ybarra had been convicted and sentenced to death, but also after this court had admonished him that he would not be given another opportunity to return to state court to exhaust available grounds for relief.

---

[5] Had Ybarra not raised his *Atkins* claim in this court prior to the denial of his petition, the court would have reached the opposite conclusion. *See Ochoa v. Sirmons*, 485 F.3d 538, 540-41 (10th Cir. 2007).

[6] Ybarra makes no specific argument that he is entitled to relief under any of the other subsections of Rule 60(b).

[7] The court in *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir.2009) set forth numerous factors to be considered in determining whether extraordinary circumstance justify relief under Rule 60(b)(6) in a habeas case. However, those factors are designed, for the most part, to address cases in which a petitioner seeks relief based on a post-judgment change in the law. Thus, they are of limited use here.

5

While the foregoing circumstances are unique and therefore weigh in favor of Rule 60(b) relief, the court is not prepared to reopen this case to consider Ybarra's *Atkins* claim if such proceedings would be futile. *See Lopez v. Ryan*, 678 F.3d 1131, 1137 (9th Cir. 2012) ("In the final analysis, however,. . . Lopez's underlying claim does not present a compelling reason to reopen the case, because that claim is not a substantial one."). For the reasons that follow, significant obstacles stand in the way of Ybarra obtaining *Atkins* relief.

In support of his claim, Ybarra now relies on a declaration from a psychological consultant (Dr. Stephen Greenspan), dated February 12, 2012, and an intellectual assessment by a neuropsychologist (Dr. Johatnan H. Mack), dated May 29, 2012. ECF No. 177 (Ex. 5) and ECF No. 178. The latter states that "[i]t is likely, in my opinion that Mr. Ybarra's Full Scale IQ has been in the range of mental retardation since prior to the age of 18," while the former states that "[i]n my professional opinion, Robert Ybarra meets all three prongs of the definition of mental retardation, under both Nevada 433.174 [sic] and the clinical diagnostic manuals from which the statutory definition was derived." *Id.*

The Supreme Court in *Atkins* did not define mental retardation as a matter of federal law. Instead, the Supreme Court left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins*, 536 U.S. at 317 (quotation marks omitted); *see also Schriro v. Smith*, 546 U.S. 6, 6–8 (summarily vacating a Ninth Circuit order remanding a habeas petition to the Arizona courts for a jury to make the *Atkins* determination, and emphasizing that *Atkins* left enforcement to the states).

As noted above, the state district court conducted a two-day hearing on Ybarra's *Atkins* motion "at which Ybarra presented the testimony of two expert witnesses, the State presented the testimony of an expert witness, and the court considered exhibits totaling more than 3,000 pages." *Ybarra v. State*, 247 P.3d 269, 271 (Nev. 2011). In a detailed 46–page order, the district court determined that Ybarra had failed to meet his burden of proving mental retardation. ECF No. 177,

Ex. 2.

In the subsequent appeal, the Nevada Supreme Court noted that the Nevada legislature defines "mentally retarded" in this context as "'significant subaverage general intellectual functioning which exists concurrently with deficits in adaptive behavior and manifested during the developmental period.'" *Ybarra*, 247 P.3d at 273 (quoting Nev. Rev. Stat. § 174.098(7). The court further noted that the statutory definition conforms to the clinical definitions used by two professional associations that are concerned with mental retardation —the American Association on Mental Retardation (AAMR)[8] and the American Psychiatric Association (APA). *Id*., *see also Atkins*, 536 U.S. at 308 n. 3 (citing the definitions of these two organizations).

Relying on the age-of-onset used by the AAMR and the APA and the majority of jurisdictions, the state supreme court set the age of 18 years as the end of the "developmental period." *Ybarra*, 247 P.3d at 276. The court then examined the evidence presented in the district court, the district court's decision, and Ybarra's challenges to that decision, and concluded that the district court did not err in concluding that Ybarra failed "to show that he suffered from significant subaverage intellectual functioning that manifested during the developmental period" and "to meet his burden of proving adaptive behavior deficits that manifested during the developmental period." *Id*. at 276-85. This court must defer to that conclusion under *Atkins*. *See Atkins*, 536 U.S. at 317; *see also Moorman v. Schiro*, 672 F.3d 644, 649 (9th Cir. 2012).

In addition, even if Ybarra could now conclusively show that he meets Nevada's definition of mental retardation, he would be entitled to habeas relief only if, at a minimum, the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence

---

[8] This organization is now named the American Association on Intellectual and Developmental Disabilities (AAIDD).

presented in state court. *See* 28 U.S.C. § 2254(d); *see also Moorman*, 672 F.3d at 649 (applying § 2254(d) deference to the Arizona Supreme Court's denial of *Atkins* relief). The court notes, in this regard, that the neither of the aforementioned evaluations submitted with his motion appear to have been presented to the Nevada courts. In light of the Supreme Court's decisions in *Harrington v. Richter*, 131 S.Ct. 770 (2011), and *Cullen v. Pinholster*, 131 S.Ct.1388 (2011), the court is unable to conceive how the Ybarra could be entitled to relief under *Atkins*.

Even so, due to the gravity of this matter and in recognition of petitioner's right to federal review of his habeas claims, the court shall not dispose of this matter without giving the petitioner a full opportunity to be heard. As such, the court shall entertain further briefing before rendering a final decision on Ybarra's motion for relief under Rule 60(b). Specifically, the petitioner shall address the following issues:

> How he is entitled to *Atkins* relief notwithstanding the Nevada Supreme Court's decision on his *Atkins* claim and the deference afforded that decision by 28 U.S.C. § 2254(d)?

> Why this court should consider evidence not presented to the state court when the state court adjudicated his *Atkins* claim on the merits?

**IT IS THEREFORE ORDERED** that petitioner's motion for relief under Rule 60(b) (ECF No. 176) is DENIED without prejudice pending submission of additional briefing.

**IT IS FURTHER ORDERED** that petitioner shall have **twenty (20) days** from the date this order is entered within which to file points and authorities on the two issues identified above. Respondents shall then have **twenty (20) days** to file a response. Petitioner shall thereafter have **ten (10) days** to file a reply.

**DATED** this 15th day of November, 2012.

_____
Gloria M. Navarro
United States District Judge