UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ROBERT YBARRA JR., | ) | |
| Petitioner, | ) | 3:00-cv-0233-GMN-VPC |
| vs. | ) | |
| | ) | **ORDER** |
| RENEE BAKER, *et al.*, | ) | |
| Respondents. | ) | |

On May 25, 2012, petitioner filed a motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. ECF No. 176. With that motion, he asserted that this court should set aside its prior orders and judgment denying habeas relief and allow him to amend his habeas petition to include a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the Eighth Amendment prohibits the execution of mentally retarded persons. On November 15, 2012, this court entered an order denying petitioner's motion without prejudice pending further briefing. ECF No. 195 (referred to herein as the "November 15 order"). For the reasons that follow, petitioner's motion for relief from judgment is denied with prejudice.

*Background*

The procedural history of this case is set forth at length in the November 15 order. Important events for the purposes of this order are as follows. In March of 2003, while this proceeding was pending, Ybarra filed a state habeas petition that included an *Atkins* claim. Subsequent to that, this court determined that Ybarra had failed to exhaust his state court remedies for numerous claims, including his *Atkins* claim, and directed him to either abandon his unexhausted claims or suffer dismissal pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982). After this court denied his motion for reconsideration of that order, Ybarra filed a notice abandoning the unexhausted claims, but reserving his right to appeal the court's order directing him to do so.

1       In October of 2006, this court entered a final order and judgment denying Ybarra's application for habeas relief in this court. While Ybarra's appeal of that decision was pending in the Ninth Circuit Court of Appeals, the state district court, after holding a two-day hearing, denied Ybarra's *Atkins* claim. In March of 2011, the Nevada Supreme Court affirmed that denial.

   In September of 2011, a three judge panel of the court of appeals affirmed this court's denial of Ybarra's habeas petition. The following May, after unsuccessfully seeking a rehearing in the Nevada Supreme Court in relation to his *Atkins* claim, Ybarra filed the Rule 60(b) motion addressed herein. In October of 2012, the United States Supreme Court denied *certiorari* in relation to Ybarra's federal appeal.

*Discussion*

   As explained in the November 15 order, Ybarra's Rule 60(b) motion is not a successive petition for the purposes of 28 U.S.C. § 2244(b) even though it presents a substantive claim for relief. ECF No. 195, p. 4-5. Nonetheless, relief under Rule 60(b)(6) – the only subsection applicable here – is available only if Ybarra can demonstrate "extraordinary circumstances" as contemplated in *Gonzalez v. Crosby*, 545 U.S. 524 (2005). At a minimum, Ybarra needs to show that reopening this case to consider his *Atkins* claim would not be futile. *See Lopez v. Ryan*, 678 F.3d 1131, 1137 (9th Cir. 2012) ("In the final analysis, however,. . . Lopez's underlying claim does not present a compelling reason to reopen the case, because that claim is not a substantial one.").

   Because the Nevada Supreme Court has adjudicated Ybarra's *Atkins* claim on the merits, Ybarra is precluded from obtaining habeas relief from this court unless the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, under 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in state court, under 28 U.S.C. § 2254(d)(2). *See Moorman v. Schiro*, 672 F.3d 644, 649 (9th Cir. 2012) (applying § 2254(d) deference to the Arizona Supreme Court's denial of *Atkins* relief). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398

1  (2011). Noting these impediments, the court asked Ybarra to explain (1) how he is entitled to *Atkins*
2  relief notwithstanding the Nevada Supreme Court's decision on his *Atkins* claim and the deference
3  afforded that decision by 28 U.S.C. § 2254(d), and (2) why this court should consider evidence not
4  presented to the state court when the state court adjudicated his *Atkins* claim on the merits.

5        As recounted in the November 15 order, the state district court conducted a two-day hearing
6  on Ybarra's *Atkins* motion "at which Ybarra presented the testimony of two expert witnesses, the
7  State presented the testimony of an expert witness, and the court considered exhibits totaling more
8  than 3,000 pages." *Ybarra v. State*, 247 P.3d 269, 271 (Nev. 2011). In a detailed 46–page order, the
9  district court determined that Ybarra had failed to meet his burden of proving mental retardation.
10  ECF No. 177, Ex. 2.

11        In the subsequent appeal, the Nevada Supreme Court noted that the Nevada legislature
12  defines "mentally retarded" in this context as "'significant subaverage general intellectual
13  functioning which exists concurrently with deficits in adaptive behavior and manifested during the
14  developmental period.'" *Ybarra*, 247 P.3d at 273 (quoting Nev. Rev. Stat. § 174.098(7)). The court
15  further noted that the statutory definition conforms to the clinical definitions used by two
16  professional associations that are concerned with mental retardation —the American Association on
17  Mental Retardation (AAMR)[1] and the American Psychiatric Association (APA). *Id.*, *see also Atkins*,
18  536 U.S. at 308 n. 3 (citing the definitions of these two organizations).

19        Relying on the age-of-onset used by the AAMR and the APA and the majority of
20  jurisdictions, the state supreme court set the age of 18 years as the end of the "developmental
21  period." *Ybarra*, 247 P.3d at 276. The court then examined the evidence presented in the district
22  court, the district court's decision, and Ybarra's challenges to that decision, and concluded that the
23  district court did not err in concluding that Ybarra failed "to show that he suffered from significant
24  subaverage intellectual functioning that manifested during the developmental period" and "to meet

---

[1] This organization is now named the American Association on Intellectual and Developmental Disabilities (AAIDD).

his burden of proving adaptive behavior deficits that manifested during the developmental period." *Id*. at 276-85.

Ybarra advances several arguments why the Nevada Supreme Court's decision to deny his *Atkins* claim does not bar relief under § 2254(d). As to § 2254(d)(1), Ybarra contends that the Nevada Supreme Court's decision was contrary to *Atkins* because the state supreme court relied on factors that are not properly part of the mental retardation standard prescribed in *Atkins*.[2] According to Ybarra, language in *Atkins* allowing states to develop "appropriate ways to enforce the constitutional restriction" refers primarily, if not entirely, to procedural mechanisms. ECF No. 200, p. 22-23 (quoting *Atkins*, 536 U.S. at 317). Thus, he claims that this court misstated the holding of *Atkins* when it noted, in its prior order, that the Supreme Court did not define mental retardation as a matter of federal law. *Id*.

In a recent decision addressing a denial of *Atkins* relief by the Idaho Supreme Court, the Ninth Circuit shed some light on this issue:

> In reviewing the Idaho Supreme Court's decision, we must first ascertain what is the clearly established law of *Atkins* and then determine whether the Idaho Supreme Court unreasonably applied that law in Pizzuto's case. Pizzuto faces a high barrier on this issue because the Supreme Court, while outlawing the death penalty for mentally retarded persons, left definition of that term broadly open for consistent state-court decisions. And so the Supreme Court gave some leeway to state legislators to craft their own standard for what constitutes mental retardation. As we have previously explained: "The Supreme Court in *Atkins* did not define mental retardation as a matter of federal law. With respect to mental retardation . . . the Supreme Court left to the states 'the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Moormann v. Schriro*, 672 F.3d 644, 648 (9th Cir. 2012) (alteration in original) (quoting *Atkins*, 536 U.S. at 317, 122 S.Ct. 2242); *see also Hill v. Humphrey*, 662 F.3d 1335, 1339 (11th Cir. 2011) (en banc) ("In *Atkins*, the Supreme Court was careful not to fix the burden of proof or to impose rigid definitions of mental retardation. Instead, the Court left it to the states to develop 'appropriate' procedures for mental retardation determinations. . . ."). More

---

[2] According to the Supreme Court, § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *See Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). As the Ninth Circuit has observed, however, "defining the precise contours of the 'contrary to' and 'unreasonable application' prongs of § 2254(d)(1)" is often difficult. *Sessoms v. Runnels*, 691 F.3d 1054, 1058 (9th Cir. 2012), vacated on other grounds by *Grounds v. Sessoms*, 133 S.Ct. 2886 (2013). Thus, this court has not limited its analysis to the "contrary to" clause even though that is the only clause of the two that Ybarra relies upon in his briefing.

recently, the Supreme Court reaffirmed that *Atkins* did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation will be so impaired as to fall [within *Atkins*' compass]." *Bobby v. Bies*, 556 U.S. 825, 831, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009) (alteration in original) (internal quotation marks omitted); *see also Schriro v. Smith*, 546 U.S. 6, 6–8, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005) (per curiam).

The "clearly established law" of *Atkins* is its holding "that a person who is mentally retarded may not be sentenced to death." *Moormann*, 672 F.3d at 648. But clearly established Supreme Court law does not totally hem in the ability of individual states to define and determine who is mentally retarded.

*Pizzuto v. Blades*, 2013 WL 4779679, 3 (9th Cir. 2013).

Ybarra does not dispute that the definition of mental retardation at Nev. Rev. Stat. § 174.098(7)[3] conforms with the requirements of *Atkins*. He argues, however, that the definition implicates a set of "professional standards" for diagnosing mental retardation and that the Nevada Supreme Court failed to adhere to those standards in deciding Ybarra's claim. Such failure, Ybarra asserts, resulted in a decision "contrary to" *Atkins* because it imposed a more stringent standard for mental retardation than the one mandated by *Atkins*.

Given the excerpt from *Pizzuto* above, the framework of "professional standards" that Ybarra posits goes well beyond what *Atkins* requires. The *Atkins* Court did not mandate, or even recommend, any particular methodologies for determining mental retardation. As stated in *Atkins*: "To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded . . . . Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus." 536 U.S. at 317. Accordingly, a state's application of *Atkins* runs afoul of the Supreme Court's mandate only if it allows for the execution of someone who falls within that range. *See Pizzuto*, 2013 WL 4779679, 5 (holding that the "Idaho's rigid 70-point [IQ] cutoff" complies with *Atkins* because it "is sufficiently within the national consensus in enforcing the substantive protection of *Atkins*").

Viewed in these terms, Ybarra's § 2254(d)(1) argument is a series of disagreements with the

---

[3] The 2013 Session of the Nevada Legislature replaced the term "mentally retarded" with "intellectually disabled." Nevada 2013 Session Laws; Ch.186, S.B. No. 338 (2013).

Nevada courts' analysis of the testimony and documentary evidence presented in the state *Atkins* proceeding. For example, Ybarra faults the state court for taking into account his activities while incarcerated as evidence of his intellectual functioning and adaptive behavior and for focusing on his strengths rather than his deficits. He also contends that the state court unjustifiedly discredited the testimony of his experts (David Schmidt, Ph.D., and Mitchell Young, M.D.) and gave undue weight to the testimony of the State's expert (Ted Young, Ph.D.), who, according to Ybarra, did not comply with scientific standards in reaching his conclusions. As the Supreme Court has stressed, however, the more general the rule being considered, "the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Because "fairminded jurists could disagree" about whether the arguments or theories supporting the Nevada Supreme Court's decision "are inconsistent with the holding in [*Atkins*]," Ybarra has not shown that the decision is not entitled to deference under § 2254(d)(1). *Id*.

Ybarra advances several reasons why the Nevada Supreme Court's decision was based on an unreasonable determination of the facts under § 2254(d)(2). For one, Ybarra contends that the state court relied on evidence outside the record to discount testimony from Dr. Schmidt about the validity of Ybarra's score of 86 on a 1981 IQ test. Dr. Schmidt testified that the score could be inflated by as many as 15 points due to the Flynn Effect. The Flynn Effect is "a theory that IQ scores increase over time, so that a person who takes an IQ test that has not recently been 'normed' may have an artificially inflated IQ score." *Pizzuto*, 2013 WL 4779679, 10 (citing James R. Flynn, *Tethering the Elephant: Capital Cases, IQ, and the Flynn Effect*, 12 Psychol. Pub. Pol'y & L. 170, 173 (2006)).

The State attempted to submit evidence from Dr. Ted Young after the state court evidentiary hearing indicating that, at most, the Flynn effect would result in only an 8 point reduction to the 1981 test score. According to Ybarra, the state district court and the Nevada Supreme Court relied on this evidence even though Ybarra had no opportunity to cross-examine Dr. Young on the issue and the state district court had granted Ybarra's motion to strike the evidence from the record. A review of

the record reveals, however, that the state district court actually relied on a reported California case and the same Flynn article cited in *Pizzuto* to arrive at the 8 point reduction. ECF No. 177, p. 45; ECF No. 177-1, p. 1. The Nevada Supreme Court upheld the state district court's analysis without any apparent reliance on the evidence submitted by Dr. Young. *Ybarra*, 247 P.3d at 282. Moreover, the Nevada Supreme Court gave several reasons why the Flynn effect, as it relates to the 1981 IQ score, would not change the outcome of this case. *Id*. at 282-83.

Ybarra also argues that the state court's determination of the facts was unreasonable because the state district court and Nevada Supreme Court systematically disregarded evidence supporting Ybarra's *Atkins* claim and relied upon lay beliefs and stereotypes in deciding that Ybarra is not mentally retarded for the purposes of *Atkins*. When assessing the reasonableness of the state court's factual findings in this context, this court "must be particularly deferential to [its] state-court colleagues," specifically, it "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 266 F.3d 992, 1000 (9th Cir. 2004).

The Nevada Supreme Court's decision to deny Ybarra's *Atkins* claim was based on its conclusion that he had failed to show, by a preponderance of the evidence, that he "suffered from significant subaverage intellectual functioning and adaptive behavior deficits during *the developmental period,* which extends to 18 years of age." *Ybarra*, 247 P.3d at 285 (emphasis added). Ybarra was 27 years old when he took the 1981 intelligence test (his first on record) that yielded a score of 86, well above the range for mental retardation. The IQ tests administered by Dr. Schmidt in 2002 and Dr. T. Young in 2007 resulted in scores of 60 and 66, respectively, which would place Ybarra in the mild range of mental retardation. Dr. T. Young testified, however, that the score he obtained was invalid because it was clear to him that Ybarra was trying to manipulate the test by giving "bizarre" responses, which, in turn, caused Young to doubt the validity of Dr. Schmidt's test results.

The state court discounted the validity of the sub-70 IQ scores. In doing so, the state court

relied upon Dr. T. Young's testimony and several other references in the record to Ybarra's malingering. The state court also noted that, of "all the testing and observation of Ybarra from 1979 to 2002, Dr. Schmidt was the first to conclude that Ybarra was mentally retarded." *Ybarra*, 247 P.3d at 280. Not unreasonably, the state court found the result of the 1981 test to be more consistent with other assessments of Ybarra's intellectual functioning contained in the record.

The assessment of adaptive behavior deficits is far more subjective than intellectual functioning and, in this case, complicated by the fact that Ybarra's developmental period ended in 1971. Both of Ybarra's experts, Dr. Schmidt and Dr. M. Young, testified about historical events in Ybarra's life that, according to them, demonstrate adaptive behavior deficits. Having reviewed the record and read the testimony of the two experts, this court agrees with the Nevada Supreme Court's holding that "rather than disregarding that testimony, the district court found much of it to be incredible given other evidence in the record, all of which is carefully delineated in the district court's thorough written order." *Ybarra*, 247 P.3d at 284. Similarly, the state court did not rely on its own lay opinion and stereotypes about mental retardation, but instead made reasonable inferences from other evidence in the record to discredit the experts' opinion. In addition, the state court justifiably found that the experts viewed the available evidence selectively and, in some instances, made unsubstantiated assumptions in construing events and occurrences in Ybarra's past as examples of adaptive behavior deficits.

Finally, Ybarra argues that the Nevada Supreme Court's decision was based on an unreasonable determination of the facts because the state court placed too much emphasis on evidence that Ybarra was malingering. In making this argument, he stresses that malingering does not necessarily militate against a diagnosis of mental retardation. This point was not lost, however, on the state court. Indeed, both the state district court and the Nevada Supreme Court acknowledged that malingering and mental retardation can be coexisting conditions. ECF No. 177-1, p. 4; *Ybarra*, 247 P.3d at 285. Even so, it was not unreasonable fact finding for the state court to use evidence of malingering, which was substantial, as a reason to give less weight to some of Ybarra's evidence.

8

Based on the foregoing, this court concludes that the state court's decision to deny Ybarra's *Atkins* claim was not unreasonable under either subsection of § 2254(d).

With respect to the second issue for which the court sought additional briefing, Ybarra argues that this court may consider, in ruling upon his Rule 60(b) motion, a declaration from a psychological consultant (Dr. Stephen Greenspan), dated February 12, 2012, and an intellectual assessment by a neuropsychologist (Dr. Johathan H. Mack), dated May 29, 2012. ECF No. 177 (Ex. 5) and ECF No. 178. The latter states that "[i]t is likely, in my opinion that Mr. Ybarra's Full Scale IQ has been in the range of mental retardation since prior to the age of 18," while the former states that "[i]n my professional opinion, Robert Ybarra meets all three prongs of the definition of mental retardation, under both Nevada 433.174 [sic] and the clinical diagnostic manuals from which the statutory definition was derived." *Id.*

Under *Cullen v. Pinholster*, 131 S.Ct.1388 (2011), this court is barred from considering additional evidence once it has determined that § 2254(d) precludes habeas relief. *See Pinholster*, 131 S. Ct. at 1411 n.20; *see*, *also*, *Sully v. Ayers*, 2013 WL 3988674, 14 (9th Cir. 2013) (holding that lower court did not abuse its discretion in denying an evidentiary hearing on ineffective assistance claims that had been adjudicated in state court). Thus, having determined that § 2254(d) bars *Atkins* relief, this court cannot consider material that was not presented to the state court.

Ybarra concedes that Dr. Mack's assessment was not presented to the state court, but argues that this court may consider Dr. Greenspan's analysis because he presented it to Nevada Supreme Court with a motion seeking reconsideration of that court's decision to deny his *Atkins* claim. The motion was filed April 19, 2012, nine years after Ybarra had first filed his *Atkins* claim in state district court, a year after the Nevada Supreme Court's decision on the merits of the claim, and after the Nevada Supreme Court had already once denied rehearing with respect to that decision. ECF No. 215-1, p. 1-51. The entirety of the Nevada Supreme Court's ruling upon the motion is four sentences of procedural background and the following statement: "Having considered appellant's motion and the opposition and finding no cause to reconsider our opinion, we deny the motion." *Id.*,

9

p. 59-61.

In announcing the holding relevant here, the Court in *Pinholster* stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

*Pinholster*, 131 S.Ct. at 1398. Generally, the state court's "last reasoned decision" is the one subject § 2254(d) review. *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).[4] Here, the last reasoned decision addressing Ybarra's *Atkins* claim is the decision issued by the Nevada Supreme Court on March 3, 2011, – i.e., *Ybarra v. State*, 247 P.3d 269 (Nev. 2011). The record before the Nevada Supreme Court at that time did not include Dr. Greenspan's declaration.

Dr. Greenspan's declaration can factor in this court's § 2254(d) analysis only if the Nevada Supreme Court's summary denial of Ybarra's motion for reconsideration, not its reasoned decision affirming the lower court, is the state-court adjudication on the merits contemplated by *Pinholster*. The Supreme Court in *Richter* held that a summary denial of relief can be subject to § 2254(d) review. *Richter*, 131 S.Ct. at 784). The Ninth Circuit has recognized, however, that the *Richter* holding is limited to the circumstances presented in that case – i.e., that "[t]he question in *Richter* arose because state habeas petitions in California are presented to the state supreme court as original petitions, rather than as requests for review of lower-court rulings denying relief. . . . ." and, not only was there no reasoned decision by a lower court in *Richter*, there was no reasoned decision at all. *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2013) (quoting *Williams v. Cavazos*, 646 F.3d 626, 635 (9th Cir. 2011)).

Ybarra cites to *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008), and *Blair v. Crawford*,

---

[4] Also, it is well established that if the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, a federal habeas court may consider both decisions to ascertain the reasoning of the last decision. *See Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

275 F.3d 1156 (9th Cir. 2002), to argue that the Nevada Supreme Court considered Dr. Greenspan's report in deciding to deny his *Atkins* claim on the merits. In both cases, a prisoner seeking habeas relief filed, as an initial action, a petition for an extraordinary writ in the Nevada Supreme Court and received a summary denial. Noting a provision in the Nevada Constitution (Article VI, section 4) granting the Nevada Supreme Court original jurisdiction to issue writs, the Ninth Circuit held that such a petition could effectuate exhaustion (*Chambers*) and constitute a "properly filed" petition for the purposes of 28 U.S.C. § 2244(d)(2) (*Blair*). *Chambers*, 549 F.3d at 1196; *Blair*, 275 F.3d at 1158. Beyond the fact that neither case addresses the specific question presented here, Ybarra's motion for reconsideration in the Nevada Supreme Court bears little procedural or substantive resemblance to an original petition for an extraordinary writ. As such, *Chambers* and *Blair* are not persuasive.

Missing from Ybarra's briefing is any authority for the proposition that the Nevada Supreme Court, in an appeal from a lower court's order, will reconsider its decision on the merits in response to new evidence submitted by the losing party.[5] The Court in *Pinholster* noted that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Pinholster*, 131 S.Ct. at 1398. Likewise, it would be strange for this court to analyze whether the Nevada Supreme Court's decision to deny Ybarra's *Atkins* claim was unreasonable because the state court did not ignore state law and

---

[5] In conformity with general appellate practice, the Nevada Supreme Court confines the record on appeal from a district court order to papers and exhibits filed in the district court, the transcript of the proceedings, the district court minutes, and the docket entries made by the district court clerk. NV ST RAP Rule 10. Rehearing will be granted only "[w]hen the court has overlooked or misapprehended a material fact in the record or a material question of law" or "has overlooked, misapplied or failed to consider a statute, procedural rule, regulation or decision directly controlling a dispositive issue in the case." *McConnell v. State*, 107 P.3d 1287, 1288 (Nev. 2005) (quoting NV ST RAP Rule 40(c)(2)). The Nevada Supreme Court does not permit a litigant to supplement the record with documents which have not been presented to the court below. *Vacation Village, Inc. v. Hitachi America, Ltd.*, 901 P.2d 706, 707 (Nev. 1995).

rules of procedure to allow Ybarra to submit new evidence long after the state court had resolved the case on the merits. Accordingly, this court has not considered the declaration from Dr. Greenspan nor the assessment from Dr. Mack in deciding whether Ybarra is entitled to relief under Rule 60(b).

For the reasons discussed above, Ybarra's *Atkins* claim does not present a compelling reason to reopen his habeas case. As such, he is not entitled to relief from judgment pursuant to Rule 60(b)(6).

**IT IS THEREFORE ORDERED** that petitioner's motion for relief under Rule 60(b) (ECF No. 176) is DENIED with prejudice.

**IT IS FURTHER ORDERED** that, to the extent 28 U.S.C. § 2253 applies to petitioner's motion, a Certificate of Appealability is DENIED.

DATED this 8th day of October, 2013.

Gloria M. Navarro
United States District Judge