UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT YBARRA, JR.,

    Petitioner,

vs.

RENEE BAKER, *et al.*,

    Respondents.

3:00-cv-0233-GMN-VPC

**ORDER**

On October 8, 2013, this court entered an order denying petitioner Ybarra's motion for relief from judgment pursuant to Rule60(b)(6) of the Federal Rules of Civil Procedure. ECF No. 228 (referred to herein as the "October 8 order"). On November 5, 2013, Ybarra filed, pursuant to Rule 59(e), a motion to alter or amend that order. ECF No. 229. For the reasons set forth below, that motion shall be denied with respect to the court's decision to deny relief from judgment. The motion is granted, however, as to the court's decision to deny a certificate of appealability.

*Procedural History*

In October of 2006, this court entered a final order and judgment denying Ybarra's third application for habeas relief in this court. Prior to the entry of that order, in March of 2003, Ybarra filed a state habeas petition that included a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), a case that prohibits the execution of intellectually disabled persons.[1] In July of 2004, this court ruled upon respondents' motion to dismiss Ybarra's federal petition. In doing so, the court found that Ybarra had failed to exhaust his state court remedies for numerous claims, including his *Atkins* claim, and directed him to either abandon his unexhausted claims or suffer dismissal pursuant to *Rose v. Lundy*, 455 U.S. 509 (1982). After this court denied his motion for reconsideration with

---

[1] Although *Atkins* used the term "mental retardation," the term "intellectual disability" is now the preferred nomenclature in the legal and medical community. *See Hall v. Florida*, 134 S.Ct 1986, 1990 (2014)

regard to that decision, Ybarra filed a notice abandoning the unexhausted claims, but reserving his right to appeal the court's orders directing him to do so.

While Ybarra's appeal of this court's October 2006 judgment was pending in the Ninth Circuit Court of Appeals, the state district court, after holding a two-day hearing, denied Ybarra's *Atkins* claim. The Nevada Supreme Court affirmed that decision in March of 2011. *Ybarra v. State*, 247 P.3d 269 (Nev. 2011)

In September of 2011, a three judge panel of the court of appeals affirmed this court's denial of Ybarra's federal habeas petition. *Ybarra v. McDaniel*, 656 F.3d 984 (9th Cir. 2011). In May of 2012, the Nevada Supreme Court, having denied Ybarra's multiple requests for reconsideration in relation to his *Atkins* claim, ordered the issuance of the remittitur.[2] Two days later, Ybarra filed a Rule 60(b) motion in this court, asserting that this court should set aside its prior orders and judgment denying habeas relief and allow him to amend his habeas petition to include an *Atkins* claim.

In an order entered November 15, 2012, this court concluded that Ybarra's Rule 60(b) motion was not a successive petition for the purposes of 28 U.S.C. § 2244(b) and ordered additional briefing on Ybarra's *Atkins* claim. After considering that briefing, this court concluded, in essence, that the Nevada Supreme Court's decision to deny Ybarra's *Atkins* claim is entitled to deference under 28 U.S.C § 2254(d) and, therefore, cannot be set aside by this court. That decision is the subject of Ybarra's motion under Rule 59(e).

*Rule 59(e) Standards*

Federal Rule of Civil Procedure 59(e) provides authority for a court to alter, amend, or vacate a prior order. *See* Fed. R. Civ. Pro. 59(e); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1415 (9th Cir.

---

[2] Ybarra also petitioned the United States Supreme Court for certiorari in relation to the Nevada Supreme Court's rejection of his *Atkins* claim and the Ninth Circuit's decision to affirm this court's denial of his habeas petition. Both petitions were denied. *Ybarra v. Nevada*, 132 S. Ct. 1904 (2012); *Ybarra v. Baker*, 133 S. Ct. 424 (2012).

1994). Even so, the remedy provided by the rule is extraordinary and, in the interests of finality and conservation of judicial resources, to be used sparingly. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Where a party presents no arguments in a Rule 59(e) motion that have not already been raised, relief may be denied. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985).

Case law in the Ninth Circuit acknowledges that Rule 59(e) amendments are appropriate under the following circumstances: (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or its initial decision was manifestly unjust, or (3) there is an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir.2003); *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Rule 59(e) motions may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *Carroll*, 342 F.3d at 945.

*Discussion*

With his Rule 59(e) motion, Ybarra does not present any newly discovered evidence or identify an intervening change in controlling law. Thus, the issue here is confined to whether the court, in its October 8 order, committed clear error or rendered a decision that was manifestly unjust.

Ybarra argues that this court erred by not considering, in conducting its § 2254(d) analysis, a declaration from a psychological consultant (Dr. Stephen Greenspan) and an intellectual assessment by a neuropsychologist (Dr. Johnathan H. Mack). With respect to both items, Ybarra contends that, because the state court's decision is not entitled to deference under § 2254(d), he is entitled to a de novo review of all the available evidence. The issue of § 2254(d) deference is addressed below in the discussion of Ybarra's argument that the court erred in concluding that he cannot overcome the limitations set forth in that section.

With respect to Dr. Greenspan's declaration, Ybarra contends that the court was incorrect in concluding that *Chambers v. McDaniel*, 549 F.3d 1191 (9th Cir. 2008), and *Blair v. Crawford*, 275 F.3d 1156 (9th Cir. 2002), do not require this court to consider the declaration. Ybarra goes to great

3

lengths to demonstrate that *Chambers* and *Blair* control the outcome here. In the end, however, *Blair* and *Chambers* addressed, for reasons unique to each case, whether the Nevada Supreme Court had considered, in a wholly-different type of proceeding, the merits of the petitioner's habeas claims. Here, there is no dispute that the Nevada Supreme Court considered the merits of Ybarra's *Atkins* claim.

Instead, the issue is whether Greenspan's declaration was part of the record that was before the state court that adjudicated the claim on the merits for the purposes of § 2254(d) and *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011).[3] As noted in the October 8 order, Ybarra submitted the Greenspan declaration to the Nevada Supreme Court nine years after he had first filed his *Atkins* claim in state district court, a year after the Nevada Supreme Court's decision on the merits of the claim, and after the Nevada Supreme Court had already once denied rehearing with respect to that decision.

The Court in *Pinholster* stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. *This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.*

*Pinholster*, 131 S.Ct. at 1398 (emphasis added). The state-court adjudication in this case occurred when the Nevada Supreme Court issued its decision on March 3, 2011, – i.e., *Ybarra v. State*, 247 P.3d 269 (Nev. 2011), not when it summarily denied reconsideration of that decision (for the second time) a year later. Neither *Blair* nor *Crawford* nor any other authority cited by Ybarra compels a different result.

Ybarra argues that this court erred in concluding that he could not overcome the bar to relief imposed by § 2254(d). In particular, he claims this court's reliance on the Ninth Circuit's decision in

---

[3] Ybarra concedes that Dr. Mack's assessment was not presented to the state court at any point.

4

*Pizzuto v. Blades*, 729 F.3d 1211 (9th Cir. 2013), is misplaced because *Pizzuto* has "effectively been overruled by the Supreme Court" in *Hall v. Florida*, 134 S.Ct 1986 (2014). ECF No. 247, p. 2.

At the center of the dispute in both *Hall* and *Pizzuto* is whether a state scheme that categorically bars defendants who do not have an IQ test score of 70 or below from demonstrating intellectual disability runs afoul of *Atkins*. *See Question Presented, Petitioner's Brief in Hall*, 2013 WL 6673693 (filed Dec. 16, 2013); *Petition for Rehearing and Petition for Rehearing En Banc in Blades*, Court of Appeals Case No. 12-99002 (filed Oct. 23, 2013). The Court in *Hall* opined that a State's discretion in defining intellectual disability under *Atkins* must be "informed by the work of medical experts." *Hall*, 134 S.Ct at 1993. The Court also surveyed the laws in other States and its own decision in *Atkins* as to the imposition of a strict 70 cutoff. *Id*. at 1996-98. Based on those factors, the Court determined that the Florida rule runs afoul of *Atkins* because the strict cutoff has been rejected in "the vast majority of States," "goes against the unanimous professional consensus," and definitions of intellectual disability cited in *Atkins* that, "by their express terms, rejected a strict IQ test score cutoff at 70." *Id*., 1998-2000 (citation omitted). Accordingly, the Court held "that when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.* at 2001.

While it prompted the Ninth Circuit to withdraw its opinion in *Pizzuto*,[4] *Hall* does not strengthen Ybarra's case for relief. Nevada has no "bright-line rule" defining intellectual disability and no such rule was applied to Ybarra by the Nevada Supreme Court. Ybarra presented, and the state court considered, evidence well beyond his IQ test score, including evidence regarding adaptive deficits. *Hall* emphasizes the need for state courts to rely on the expertise of the medical profession in applying *Atkins*, but also recognizes "the States play a critical role in advancing protections and

---

[4] *See Pizzuto v. Blades*, 758 F.3d 1178 (9th Cir. 2014) (withdrawing opinion reported at *Pizzuto v. Blades*, 729 F.3d 1211 (9th Cir. 2013), and remanding case to the district court for further proceedings consistent with *Hall*).

5

1  providing the Court with information that contributes to an understanding of how intellectual
2  disability should be measured and assessed." *Hall*, 134 S.Ct. at 1998; *see also, id.* at 2000 (noting
3  that the views of medical experts inform, but do not dictate, the decision as to the constitutionality of
4  the Florida rule). Ultimately, *Hall* confirms this court's conclusion in the October 8 order that a state
5  court's discretion in applying *Atkins* is limited, but only to the extent it allows for the execution of
6  someone who falls "within the range of mentally retarded offenders about whom there is a national
7  consensus." ECF No. 228, p. 5 (quoting *Atkins*, 536 U.S. at 317).

8  Ybarra has not demonstrated that the Nevada Supreme Court applied *Atkins* in a way that
9  deviated from the accepted norm in a manner that resembles Florida's use of the bright line rule in
10 *Hall*. He argues that the Nevada Supreme Court failed to adhere to a set of "professional standards"
11 for diagnosing intellectual disability. *See* ECF No. 200, p. 22-27. Neither *Atkins* nor *Hall*, however,
12 mandates strict compliance with the detailed framework of standards that Ybarra advocates. Absent
13 from Ybarra's argument is any showing that the Nevada Supreme Court applied *Atkins* in a way that
14 the medical community has uniformly rejected or that runs contrary to the methodology used in a
15 significant number of other States. At a bare minimum, "fairminded jurists could disagree" about
16 whether Nevada Supreme Court's decision is inconsistent with the holdings in *Atkins* and *Hall*. *See*
17 *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664
18 (2004), regarding the level of deference required by § 2254(d)).

19 Ybarra also argues that this court erred in relying on *Pizzuto* in the first place because the
20 Ninth Circuit's § 2254(d) analysis in that case was confined to the Idaho Supreme Court's
21 application of the bright-line rule. This court relied on *Pizzuto*, however, as authority for a principle
22 that is not dependent upon the particular state scheme at issue in that case, that being that *Atkins*
23 bestows considerable leeway on individual states to craft and apply their own definition of
24 intellectual disability subject only to the aforementioned prohibition on allowing for the execution of
25 someone who falls "within the range of mentally retarded offenders about whom there is a national
26 consensus." ECF No. 228, p. 5 (quoting *Atkins*, 536 U.S. at 317). As explained above, *Hall*

invalidated the use of the bright-line rule to define intellectual disability, but the legal concept for which this court relied upon *Pizzuto* remains intact.

Ybarra's remaining arguments in support of his motion for relief under Rule 59(e) are either repackaged from arguments already made and rejected by this court or plainly without merit.[5] None of them demonstrate that this court committed clear error or a manifest injustice with its October 8 order. With respect to this court's decision to deny him a certificate of appealabilty, to the extent the requirement even applies here, Ybarra not only challenges the court's denial, but asks the court to also grant a COA on a procedural issue, that being whether issuance of a COA is necessary to appeal the denial of a Rule 60(b) motion.

Had this court concluded that Ybarra's Rule 60(b) motion was a successive petition for the purposes of § 2244(b), which it did not, the COA requirement would apply. *See Jones v. Ryan*, 733 F.3d 825, 832 n.3 (9th Cir. 2013). The court in *Jones* suggested in dictum that a habeas petitioner might not need a COA to appeal from the denial of a "valid Rule 60(b) motion." *Id*.

This court sees little point to granting a COA as to whether a COA is necessary to appeal the denial of a Rule 60(b) motion. Presumably, the court of appeals will address that issue regardless of whether or not this court certifies it as an issue for appeal.

As to whether Ybarra is otherwise entitled to a COA to the extent one is necessary, a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

---

[5] For example, Ybarra devotes several pages to the argument that this court erred in deferring to the state court's findings as to the Flynn Effect because the state court relied on evidence outside the record. ECF No. 229, p. 25-30. Inasmuch as the "evidence" consists of a reported California case and the same Flynn article cited in *Pizzuto* (ECF No. 228, p. 6-7), this argument borders on frivolous and does not warrant additional discussion in this context.

(1983)).

The "substantial showing" standard for a COA is "relatively low." *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002). Moreover, the *Barefoot* court noted that "in a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of [appealability]." *Barefoot*, 463 U.S. at 893. Despite the Nevada Supreme Court's adherence to applicable Supreme Court precedent and the substantial deference required by § 2254(d), the court finds that reasonable jurists could debate its resolution of Ybarra's *Atkins* claim. In other words, the question of whether this court erred in deferring to the state court's finding that Ybarra is not intellectually disabled as contemplated by *Atkins* is adequate to deserve encouragement to proceed further.

For the reasons discussed above, Ybarra is not entitled to relief under Rule 59(e) with respect to this court's October 8 order, except for the court's decision to deny a COA, to the extent the requirement applies to Rule 60(b) motions.

**IT IS THEREFORE ORDERED** that petitioner's motion to alter or amend judgment under Rule 59(e) (ECF No. 229) is **GRANTED with respect to the court's decision to deny a COA. In all other respects, the motion is DENIED**.

**IT IS FURTHER ORDERED** that the court grants a COA as to the following issue:

> Whether this court erred in deferring, under 28 U.S.C. § 2254(d), to the state court's finding that petitioner is not intellectually disabled as contemplated by *Atkins v. Virginia*, 536 U.S. 304 (2002).

**IT IS FURTHER ORDERED** that respondents motion for leave to file excess pages (ECF No. 242) is **GRANTED** *nunc pro tunc* as of February 14, 2014.

**DATED** this 29th day of September, 2014.

Gloria M. Navarro, Chief Judge
United States District Court

8